# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re:<br><br>**Julie M. Acarregui,**<br><br>           **Debtor.** | **Bankruptcy Case**<br>**No. 16-00839-JDP** |

_____

## MEMORANDUM OF DECISION

_____

Appearances:

    Howard Foley, FOLEY FREEMAN, PLLC, Meridian, Idaho,
Attorney for Debtor.

    Matthew Christensen, ANGSTMAN JOHNSON, Boise, Idaho,
Attorney for Chapter 7 Trustee Janine Reynard.

### *Introduction*

    When chapter 7[1] debtor Julie Acarregui filed her bankruptcy

---

[1] Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references
are to the Federal Rules of Civil Procedure, Rules 1–86.

MEMORANDUM OF DECISION – 1

petition, she held interests in three college savings accounts.  *See* Schedule

A/B, Dkt. No. 1.  She claims, to the extent these accounts were not excluded

from the bankruptcy estate under § 541(b)(6), that the funds in the accounts

are exempt pursuant to Idaho Code § 11-604A.  Am. Schedule C, Dkt. No.

83.  Trustee Janine Reynard ("Trustee") objected to Debtor's claim of

exemption.  Dkt. Nos. 80.  Debtor also filed a Motion to Compel

Abandonment as to the college savings accounts.  Dkt. No. 72.  Trustee

objected to this motion.  Dkt. No. 78.

On April 4, 2017, the Court conducted a hearing concerning

Trustee's objection to Debtor's claim of exemption and Debtor's motion to

abandon.  Minute Entry, Dkt. No. 98.  The parties executed stipulations

reciting the relevant facts and submitting documentary exhibits and filed

pre-hearing memoranda.  *See* Dkt. Nos. 90, 91, 94, 95.  At the hearing, the

parties presented oral arguments and the Court then took the issues under

advisement.

Having considered the record, as well as the applicable law, the

Court concludes Debtor's interest in the funds in the college savings

MEMORANDUM OF DECISION – 2

accounts that are property of the estate are not exempt under Idaho Code §

11-604A.[2]

### Facts

Debtor Julie Acarregui filed the bankruptcy petition commencing

this case on June 28, 2016, and in schedule A/B, she listed her interests in

three college savings accounts she has maintained and funded for her

children and a grandchild.  Schedule A/B, Dkt. No. 1.  The parties agreed

that all of Debtor's deposits into these accounts, any dividends and capital

gains, and the accounts' resulting share values prior to June 17, 2015, are

excluded from property of the estate pursuant to § 541(b)(6).  Stipulation at

2, Dkt. No. 91.  The parties also stipulated that Debtor's deposits into the

accounts, the dividends and capital gains accruing on those deposits, and

the resulting values for the shares acquired during the period between

June 27, 2015 and June 27, 2016, the day before the filing of the petition,

amounted to $6,504.04.  *Id.*  Finally, they stipulated that the $6,504.04, plus

---

[2] This Memorandum sets forth the Court's findings, conclusions and
reasons for its decision.  Rules 7052; 9014.

MEMORANDUM OF DECISION – 3

any dividends and capital gains attributable to these deposits post-petition, are property of the bankruptcy estate.  *Id.*

Debtor claims that her interest in the funds in the accounts that are property of the estate are exempt pursuant to Idaho Code § 11-604A.[3] Schedule C, Dkt. No. 83.  Trustee objected to this claim, arguing that Idaho Code § 11-604A does not apply because these college savings accounts were not established under the Idaho College Savings Program, as codified in chapter 54, title 33 of the Idaho Code, commonly referred to as the "IDEAL program".[4]  Dkt. No. 80.

Debtor also filed a Motion to Compel Abandonment of the college

---

[3] Earlier, Debtor had also claimed the accounts exempt pursuant to Idaho Code §§ 55-1011 and 11-207; she later amended her schedule C to claim an exemption solely under Idaho Code § 11-604A.  *Compare* Schedule C, Dkt. Nos. 1, 54, 65 *with* Schedule C, Dkt. No. 83.  Moreover, in her pretrial memorandum, Debtor expressly abandoned any claim of exemption under Idaho Code § 11-207. Debtor's Mem. at 2, Dkt. No. 90.

[4] Creditor Meridian CenterCall, L.L.C. also filed objections to Debtor's claim of exemption in the accounts.  Dkt. Nos. 47, 61.  However, given Trustee's active participation in the matter, on March 15, 2017, the creditor filed a notice stating its intent not to participate any further in this contested matter, and it has not taken any further action concerning Debtor's exemptions since that time. Dkt. No. 85.

MEMORANDUM OF DECISION – 4

savings accounts, arguing that Debtor's interests therein are either not property of the estate, or are exempt. Dkt. No. 72. Trustee objected to the motion reiterating her position that a portion of the funds in the accounts is not exempt. Dkt. No. 78.

The parties stipulated that the college savings accounts in question here were established under Virginia's college savings program through American Funds Distributors, Inc., a California corporation authorized to do business in the state of Idaho. Stipulation at 1–2, Dkt. No. 91. The parties opined that the only issue to be resolved by the Court in this case is a legal one: whether Debtor's interest in the funds in the savings accounts that are property of the estate are exempt under Idaho Code § 11-604A. *Id.* at 2. The Court addresses that issue below.

### *Analysis and Disposition*

Under Idaho Code § 11-604A, may a debtor exempt her interest in funds in a college savings account not established under the IDEAL program? This is an issue of first impression in this District. While the Court on prior occasions has generally considered the exempt status of

MEMORANDUM OF DECISION – 5

college savings accounts, the facts in those cases were different, and the

rules announced in the Court's decisions cited by the parties do not

address the specific issue at hand in this case.[5]

## A.    College Savings Accounts Generally

Generally, when a bankruptcy petition is filed, all legal and equitable

interests of debtors in property flow into a bankruptcy estate, which is

automatically created at the commencement of the case.  § 541(a).

However, Congress, in § 541(b), excluded certain property interests from

the estate created when a bankruptcy case is commenced.  Likely intending

to encourage college savings by debtors, while at the same time protecting

creditors from abusive "bankruptcy planning" schemes, in 2005, Congress

enacted § 541(b)(6) providing that "funds . . . contributed to an account in

---

[5] For example, the facts in *In re McFarland* are distinguishable because the account there was established under the IDEAL program, and the Court merely addressed whether the debtor needed to be the beneficiary of the account to claim it as exempt.  04.3 IBCR 136, 136–37 (Bankr. D. Idaho 2004).  In *In re Bourguignon*, the college savings account was created under a New Mexico statute, rather than the IDEAL program, but the debtors did not claim an exemption in the account; the Court addressed only whether the account was property of the estate. 416 B.R. 745, 748–55 (Bankr. D. Idaho 2009).

MEMORANDUM OF DECISION – 6

accordance with section 529(b)(1)(A) of the Internal Revenue Code of 1986

under a qualified State tuition program . . . not later than 365 days before

the date of the filing of the petition in a case under this title" are not

included in property of the estate.  § 541(b)(6).  The parties have agreed

that, under § 541(b)(6), the bulk of the funds in the Debtor's college savings

accounts is excluded from the estate, and that only those sums attributable

to Debtor's deposits, any dividends or capital gains, and the account's

resulting share values, within the 365 days prior to the commencement of

her case, constitute estate property.  The parties agreed that this amounts

to a total of $6,504.04, together with any post-petition dividends and

capital gains attributable to that amount.

In addition to excluding certain types of property from the

bankruptcy estate, "the Code permits Debtors to shield certain property

from administration by Trustee, through the use of exemptions." *In re Hall*,

464 B.R. 896, 903 (Bankr. D. Idaho 2012); § 522(b)(1).  The Code allows

states to "opt out" of the federal exemption scheme in favor of its own.

§ 522(b)(3).  Idaho has chosen to opt out, so Debtor may claim only those

MEMORANDUM OF DECISION – 7

exemptions allowable under Idaho law, as well as those listed in

§ 522(b)(3).  Idaho Code § 11-609; 11 U.S.C. § 522(b)(3).

**B.**    **College Savings Programs and Idaho Code § 11-604A**

Debtor claims that her interest in the college savings accounts that is

not excluded from property of the estate is exempt under Idaho Code § 11-

604A.  That statute provides that:

> The right of a person to a pension, annuity, or retirement
> allowance or disability allowance, or death benefits, or any
> optional benefit, or any other right accrued or accruing to any
> citizen of the state of Idaho under any employee benefit plan,
> and any fund created by the benefit plan or arrangement, shall
> be exempt from execution, attachment, garnishment, seizure,
> or other levy by or under any legal process whatever . . . .

Idaho Code § 11-604A(3).

While Idaho Code § 11-604A was enacted "to ensure the well-being

of its citizens by protecting retirement income to which they are or may

become entitled," the Legislature also sought to protect certain types of

college savings accounts.  Idaho Code §§ 11-604A(1), (4).  It did this by

expansively defining the term "employee benefit plan" to include "any

rights accruing on account of money paid currently or in advance pursuant

MEMORANDUM OF DECISION – 8

to a college savings program described in chapter 54, title 33, Idaho Code."

Idaho Code § 11-604A(4)(b). Chapter 54, title 33 of the Idaho Code

establishes the Idaho College Savings Program, commonly referred to as

the IDEAL program. Idaho Code §§ 33-5401–5410.

## C.      The Parties' Arguments

The source of the parties' dispute in this case is Idaho Code § 11-

604A(4)(b)'s reference to only those college savings programs "described in

chapter 54, title 33, Idaho Code". Trustee argues that via the specific

reference in Idaho Code § 11-604A(4)(b) to the statutes establishing the

IDEAL program, only those college savings accounts established under

that program are exempt.

Debtor disagrees. She argues that, because it is an exemption

statute, the phrase "a college savings program described in chapter 54, title

33, Idaho Code" should not be read narrowly, but should be interpreted

broadly to include Debtor's college savings accounts, despite her

admission that they were established under Virginia law. To read the

exemption statute as Trustee suggests, Debtor argues, would promote an

MEMORANDUM OF DECISION – 9

absurd result: protecting Idaho college savings accounts, while subjecting

virtually identical accounts to the claims of a debtor's creditors.

**D.      Interpretation of Idaho Code § 11-604A**

In parsing the meaning of an Idaho statute, the Court is guided by

the Supreme Court of Idaho, which has summarized its long-established

standard for statutory interpretation as follows:

> Interpretation of [an Idaho] statute begins with an
> examination of the statute's literal words.  Where the language
> of a statute is plain and unambiguous, courts give effect to the
> statute as written, without engaging in statutory construction.
> Only where the language is ambiguous will this Court look to
> rules of construction for guidance and consider the
> reasonableness of proposed interpretations.

*Stonebrook Const., LLC v. Chase Home Fin., LLC*, 277 P.3d 374, 378 (Idaho

2012) (*quoting Curlee v. Kootenai Cty. Fire & Rescue*, 224 P.3d 458, 465 (Idaho

2012).  A statute "is ambiguous where reasonable minds might differ or be

uncertain as to its meaning.  However, ambiguity is not established merely

because the parties present differing interpretations to the court."  *Id.*

(quoting *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley Cnty.*,

976 P.2d 477, 483 (Idaho 1999)).

MEMORANDUM OF DECISION – 10

Debtor is correct in that, in Idaho, exemption statutes are to be liberally construed in favor of the debtor. *In re Hall*, 464 B.R. at 903. But even so, "the statutory language may not be 'tortured' in the guise of liberal construction." *In re Wiley*, 352 B.R. 716, 718 (Bankr. D. Idaho 2006) (citing *In re Collins*, 97.3 IBCR 78, 79 (Bankr. D. Idaho 1997)).

1.    **The exemption statute's language: "*A* college savings program *described* in chapter 54, title 33, Idaho Code".**

Debtor argues that the Legislature's use of the word "a" in the phrase "a college savings program" in Idaho Code § 11-604A(4)(b) demonstrated its intent to protect accounts established under any qualified state college savings program. The Court comes to the opposite conclusion. And while Debtor's approach would have been a laudable gesture for the Legislature to promote, the Court cannot ignore what the statutes plainly says. Because the phrase in the exemption statute protecting "a college savings program" is modified by the language immediately following that phrase ("described in chapter 54, title 33, Idaho Code"), the Court concludes that only those savings accounts

MEMORANDUM OF DECISION – 11

established under the IDEAL program may be exempted.

Debtor further argues that the word "described" in the statute
should be read to include college savings accounts similar to those set up
under the IDEAL program.  Debtor contends this interpretation is
preferable because Idaho Code § 33-5401(6), part of the laws establishing
the IDEAL program, defines "financial institution," to include, "any . . .
brokerage firm . . . or other similar entity authorized to do business in [the
State of Idaho.]"  Debtor's Mem. at 6, Dkt. No. 90 (citing Idaho Code § 33-
5401(6)).  Debtor argues that, if this definition is faithfully applied, her
accounts qualify as exempt because the entity holding the savings account
funds in this case is indeed authorized to do business in the state of Idaho.

While Debtor makes a point, to base the decision in this case on this
argument, however, would require the Court to ignore the other important
requirements for qualifying accounts in chapter 54, title 33 of the Idaho
Code.  For example, Debtor's interpretation would ignore the role played
by the IDEAL college savings program board established under Idaho
Code § 33-5402, a body that promulgates many of the specific rules and

MEMORANDUM OF DECISION – 12

Case 16-00839-JDP   Doc 113   Filed 05/31/17   Entered 05/31/17 16:48:52   Desc Main
Document   Page 13 of 20

requirements for accounts established under the IDEAL program. *See* Idaho Code § 33-5404. That board prescribes the form of application for an account; fixes an application fee; establishes procedures to change designated beneficiaries; may shorten the time for notice to withdraw from the accounts; and is responsible for adopting rules to prevent contributions in excess of those necessary to pay qualified higher education expenses of the beneficiaries, among other things. *See* Idaho Code § 33-5404(1)(a), (1)(b), (5), (13). These provisions, among others, make clear to the Court that the "college savings program described in chapter 54, title 33, Idaho Code" can only mean the IDEAL program, as governed by the board established in Idaho Code § 33-5402. No other state program, including the Virginia program, would fit this "description."

The Court concludes that the plain language of Idaho Code § 11-604A(4)(b) exempts only those college savings accounts established under the IDEAL program described in Idaho Code chapter 54, title 33. Because Debtor's accounts were not IDEAL program accounts, the funds in those accounts that are not estate property are not exempt.

MEMORANDUM OF DECISION – 13

2.      **Legislative History**

While its terms are plain, even if the exemption statute was

ambiguous, the Court would conclude that legislative history supports its

interpretation of Idaho Code § 11-604A(4)(b).

Debtor points to the Statement of Purpose from 2001 Senate Bill 1118

amending the former version of § 11-604A to support her position.

Debtor's Mem. at 7, Dkt. No. 90.  That statement begins:

> 11–604A protects certain retirement income of Idaho residents,
> by exempting such income from execution, attachment,
> garnishment, seizure and so forth. However, college savings
> programs, *described in 33–5401*, Idaho Code, were not clearly
> covered.

2001 Idaho Laws Ch. 288 (S.B. 1118) (emphasis added).  Then, after

discussing a lack of clarity concerning the community property rights of

spouses in account funds, and recent iterations of individual retirement

accounts, the statement concludes:

> This bill clarifies all the foregoing to provide: (1) college savings
> plans are covered; (2) the spouse retains his or her community
> interest in the account, which can be transferred at the death of
> the spouse pursuant to the will of the deceased spouse or by
> intestacy if there is no will; (3) the spouse is fully protected by

MEMORANDUM OF DECISION – 14

the terms of this statute; (4) a consent by the spouse to a beneficiary designation is not a gift, release, or waiver, etc.; and, (5) the alternate variations of IRA's are covered by this statute.

*Id.*

The Legislature's statement both explains deficiencies in the prior version of the statute, and enumerates the clarifications the new statute was intended to implement.  Relevant here, the Legislature explained the clarification that "college savings plans are covered" by the statute was necessary because, under the prior law, "college savings programs, *described in 33-5401*, Idaho Code were not clearly covered."  (emphasis added).  The statute as amended "fixed" this deficiency by exempting savings accounts established under "college savings programs described in chapter 54, title 33, Idaho Code."  Idaho Code § 11-604A(b)(4).  Read in this fashion, the statement of purpose supports the interpretation assigned to the statute by the Court, not Debtor's position.

The Court also notes that the amendment to Idaho Code § 11-604A that added the college savings account exemption at issue here was made shortly after Idaho enacted the IDEAL program, rather than earlier, when

MEMORANDUM OF DECISION – 15

§ 529 of the Internal Revenue Code was enacted by Congress.[6]  To the

Court, this also indicates that the Legislature intended to exempt only

those accounts established under its own newly-enacted college savings

program, and not a broader range of programs, such as any account

complying with § 529 of the Internal Revenue Code.

In sum, both the legislative history and the timing of the

amendment to the exemption statute indicate that the Idaho's Legislature

intended to exempt only those college savings accounts established under

the IDEAL program under Idaho Code § 11-604A(4)(b).

### 3.    An Absurd Result?

Finally, Debtor suggests that the Court should ignore the plain

meaning of the exemption statute, and adopt her interpretation, because to

---

[6] 26 U.S.C. § 529 establishes the guidelines by which qualified tuition programs may qualify for favorable federal tax treatment.  Idaho Code § 33-5403(6) requires the IDEAL program to comply with IRC § 529.  *See also, In re Mcfarland*, 04.3 IBCR at 137.  While 26 U.S.C. § 529 was added to the Internal Revenue Code in 1996 via PL 104–188, August 20, 1996, 110 Stat 1755, Idaho Code § 33-5401–10 was not added to the Idaho Code until 2000.  2000 Idaho Laws Ch. 213 (H.B. 627).  Idaho Code § 11-604A was amended to include the college savings account exemption later.  2001 Idaho Laws Ch. 288 (S.B. 1118).

MEMORANDUM OF DECISION – 16

do otherwise leads to an absurd result.  Debtor argues that it is absurd to protect IDEAL program college savings accounts while exposing nearly identical college savings accounts established under the laws of other states to creditor's claims, especially for debtors who relocate to Idaho after the accounts are established.[7]

To be sure, the Idaho Supreme Court "disfavors a statutory construction that would lead to absurd or unreasonably harsh results." *Ada Cty. Highway Dist. v. Total Success Invs., LLC*, 179 P.3d 323, 331 (Idaho 2008).  But the result of the Court's plain meaning interpretation of the exemption statute here is not absurd or unreasonably harsh.

That the Idaho Legislature desired to extend protection from creditor reach to college savings accounts established under the IDEAL program, but not other programs, is not patently absurd.  To encourage the success of the program, the Idaho Legislature may have sought to create an advantage for those using such accounts, as opposed to other,

---

[7] This is an odd argument for Debtor to make; the account applications for these college savings accounts show that Debtor resided in Idaho when she opened them.  Ex. Nos. 204–206,

MEMORANDUM OF DECISION – 17

similar ones.  And, as noted above, the Legislature may have been interested in shielding only those accounts subject to local control, through the board, as opposed to those governed by rules enacted by other state legislatures and bodies.  Moreover, if the Legislature was generally motivated to protect all qualified college savings programs, it could have easily done so by using a simple reference to § 529 of the Internal Revenue Code, rather than the IDEAL program, to qualify for an exemption.  It did not.  And while this decision might seem unfair to those with similar non-IDEAL program college savings accounts, the approach adopted by the Legislature was not patently absurd.  As a result, the plain meaning of the statute adopted by the Idaho Legislature stands.  It is not unreasonably harsh, either, because the exemption limitation can be easily discerned by simply reading the statute.

The Debtor's interest in the funds in the college savings accounts not excluded from the bankruptcy estate are not exempt.

///

**D.    Motion to Compel Abandonment**

MEMORANDUM OF DECISION – 18

On request of a party in interest, after notice and a hearing, the

Court may order the trustee to abandon property of the estate that is

burdensome to the estate or that is of inconsequential value and benefit to

the estate. § 554(b); *In re Garcia*, 521 B.R. 680, 684 (Bankr. D. Idaho 2014)

(citing *Johnston v. Webster (In re Johnston)*, 49 F.3d 538, 540 (9th Cir. 1994),

among other cases). The Court has explained that compelling

abandonment should be the exception, not the rule, and "absent an

attempt by the trustee to churn property worthless to the estate just to

increase fees, abandonment should rarely be ordered. *Garcia*, 521 B.R. at

684 (citations and quotations omitted).

Here, Debtor has not shown either basis exists to compel Trustee to

abandon the college savings accounts. There is no evidence to show that

Debtor's nonexempt interest in the college savings accounts are

burdensome to the estate. Absent an exemption, some portion of the

accounts have value to the estate. Thus, Debtor's motion to compel

MEMORANDUM OF DECISION – 19

abandonment of the college savings accounts will be denied.[8]

### *Conclusion*

Debtor's interest in the funds in the college savings accounts that constitute property of the estate, totaling $6,504.04 plus any post-petition dividends and capital gains attributable to this amount, is not exempt. Because this interest in the accounts is not burdensome and has value to the estate, the Court declines to compel Trustee to abandon the interest.

A separate order will be entered.

Dated:  May 31, 2017

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

---

[8] Since only a portion of the funds in the college savings accounts are property of the bankruptcy estate, and because "cashing in" the accounts might have adverse tax and other consequences, the Court presumes the parties will explore the option of allowing Debtor to compensate the estate with funds from other sources so the accounts can remain undisturbed.  The Court is inclined to approve any reasonable approach the parties select to accommodate their competing interests under these circumstances.

MEMORANDUM OF DECISION – 20